**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PAPST LICENSING GmbH & Co. KG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 6:15-cv-1095** |
| | ) | **Pending in the Eastern District of** |
| **v.** | ) | **Texas** |
| | ) | |
| **APPLE, INC., and** | ) | **No. 17 C 1853** |
| | ) | |
| **Defendant** | ) | **Judge Elaine Bucklo** |
| **PAPST LICENSING GmbH & Co. KG,** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LG ELECTRONICS U.S.A., INC. and** | ) | |
| **LG ELECTRONICS MOBILECOMM** | ) | |
| **U.S.A., INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Jerold Schnayer has moved to quash deposition subpoenas from Apple and LG Electronics, which are currently defendants in a suit brought by Papst Licensing in the Eastern District of Texas. There, Papst charges the defendants with infringement of five patents. Mr. Schnayer is an attorney who used to represent Papst in various patent law matters. Although he is not involved in the Texas case and hasn't been involved with Papst for over three years, he doesn't think he should have to sit for a deposition. The issue presented by this case is a recurring one. Yet, "[a]s common as attempts to depose opposing counsel are in all types of cases, they are particularly frequent in patent litigation." Douglas R. Richmond, *Depositions of Other Lawyers*, 81 Tenn. L. Rev. 47, 73 (2013). With all deference, under the circumstances, the motion must be denied.

## BACKGROUND[1]

### Mr. Schnayer, Papst, and Apple

While representing Papst nearly ten years ago, Mr. Schnayer sent a letter to Apple's then CEO, Steve Jobs, and accused Apple of infringing the U.S. Patents Nos. 6,470,399 ("399 patent), 6,895,449 ("449 patent"), and European Patent No. 0 917 682 ("the '682 patent"). [Dkt. #11-2]. For three years following that letter, Mr. Schnayer went back and forth with Apple over the allegations, and attempted to get Apple to license the patents. Apple refused, and the communications ended in early 2010. It wasn't until November 2015 that Apple heard from Papst again, when it filed suit in the Texas federal court. During discovery in the case, Apple provided a deposition witness on the topic of the communication, and Papst has noticed the deposition of Apple's in-house counsel, who was involved in those discussions. Apple, quite naturally, is following the same course and, in addition to deposing Papst's 30(b)(6) witness, wants to depose Mr. Schnayer, who was Papst's in-house counsel during the communications. We are told that there is no other source for the requested information, as Mr. Schnayer was the main participant in the discussions.

### Mr. Schnayer, Papst, and LG Electronics

Papst acquired the family of patents asserted in the Texas lawsuit in early 2006 from Labortechnik Tasler GmbH. At that time, two of the patents asserted against LG had already been granted. The other three patents asserted against LG were filed in August 2006 and September 2010 – during Mr. Schnayer's representation of Papst. So, Mr. Schnayer served as Papst's counsel during the acquisition of the asserted patents, communicating with Labortechnik Tasler GmbH and third

---

[1] As the underlying litigation is pending in the Eastern District of Texas, all information about the issues in that case and the background of the parties is necessarily taken from the briefs filed in this subpoena dispute.

party patent broker, PATEV GmbH & Co. KG, during Papst's licensing negotiations with third parties, including LG Electronics, and during Papst's filing and prosecution of the later-filed patent applications. As such, Mr. Schnayer communicated with a number of third parties during acquisition and licensing of the patents, asking him the source for any discovery regarding those communications. He was also involved in the prosecution of the patents. In the Texas litigation, LG has alleged, amongst other defenses, that the asserted patents are unenforceable due to the failure to disclose material prior art to the U.S. Patent & Trademark Office ("PTO") during the prosecution of those patents. So, again, Mr. Schnayer is the source of information for what was known during the prosecution. Significantly, another possible source for information on acquisition, licensing, and prosecution, George Papst, founder of the company, passed away in 2012.

**Mr. Schnayer, Apple, LG Electronics, and the Subpoenas**

Apple served the subpoena on Mr. Schnayer and provided the requisite witness fee at his residence in Glencoe, Illinois on January 27, 2017, noticing the deposition for March 3, 2017 in Chicago, with a request that relevant documents be produced some two weeks earlier on February 14. [Dkt. ##11-19, 11-20]. On February 7, 2017, Mr. Schnayer emailed Apple's counsel stating that he had not represented Papst in over three years, had never been involved in the Texas litigation, and didn't have any idea what it was about. He asked that the subpoena be withdrawn and demanded that Apple provide him voluminous documents, including "all the pleadings in the law suit, and copies of all transcript [sic] that in any way concern my potential deposition" and "any and all communications (as that term is defined in the subpoena and its attachments) that in any way concern the potential and/or actual taking of my deposition." He also asked for an extension of time to object and to "file any motions relating to the subpoena." *Id*. Moreover, he stated: "I am traveling

overseas until this coming Sunday and I have not had time to contact my attorney who is unavailable." *Id*. He demanded a response in two days. [Dkt. #11-21].

Apple responded on February 9, writing that it didn't agree with many of Mr. Schnayer's demands. It pointed out that the subpoena clearly said the litigation was about several patents acquired by Papst from Labortechnik Tasler and explained the relevance of the requested documents. More, of course, could be learned by looking the case up on PACER. Apple offered a one-week extension for producing responsive documents subject to Mr. Schnayer's confirmation that he would comply with the subpoena. Apple also offered to postpone the deposition to a date in mid-March that would be convenient for both sides. [Dkt. #11-22].

Mr. Schnayer emailed Apple back that same day, complaining that "[i]t is unreasonable for you to put any restrictions on your offer for an extension of time. I do not appreciate your lack of cooperation." He said he was still out of the country and had not reached his attorney – although it was he that demanded a response in two days. [Dkt. #11-23]. Apple then asked: "For purposes of considering your extension request, when can you reasonably commit to producing responsive documents?" [Dkt. #11-24]. Mr. Schnayer responded the next morning – February 10 – by serving objections to the subpoena accompanied by an email in which he stated, "I plan to file a motion for a protective order in due course if necessary." [Dkt. #11-25].[2]

---

[2] LG Electronics served its subpoena on February 14, and Mr. Schnayer responded with similar objections on the 28th. [Dkt. ##1-4, 1-11]. On March 2, counsel for LG Electronics emailed Mr. Schnayer's attorney, advising that it did not agree to preemptively limit the scope of its deposition of Mr. Schnayer, but would agree to a postponement. It also pointed out that if privileged matter should arise, Mr. Schnayer's counsel could object at that time. It would not agree that the deposition would not go beyond 5 p.m. because it was entitled to seven hours. [Dkt. #11-27]. *See* Fed.R.Civ.P. 30(d)(1).

On February 21 and 22, Apple's counsel emailed Mr. Schnayer asking when he was available for a meeting to discuss his objections. [Dkt. #11-26]. On February 23, Mr. Schnayer's attorney emailed Apple and LG Electronics' counsel to request a teleconference to discuss "whether we can resolve this without intervention by the court." [Dkt. #11-27]. Apple provided its availability for a call and also asked whether Mr. Schnayer would even agree to be deposed. [Dkt. #11-27]. On February 24, Mr. Applegate, counsel for Mr. Schnayer, responded that Mr. Schnayer's willingness to be deposed "depend[s] on what agreements we may be able to reach concerning the scheduling and scope of both the deposition and the requested document production[.]" [Dkt. #11-27].

On February 27, Mr. Applegate conferred with counsel for Apple and LG regarding the scope of the subpoena. In a follow up email that day, Apple summarized the discussion and reiterated that it would not pursue the document requests if Mr. Schnayer confirmed that he had already provided to Papst all relevant case files at the conclusion of his representation of the company. [Dkt. #11-27]. Apple's counsel also asked Mr. Applegate to provide dates for Mr. Schnayer's deposition availability based on statements during the call that Mr. Schnayer would be out of the country again for a week in early March. [Dkt. #11-27]. On March 1, Mr. Applegate wrote to tell the parties that "Mr. Schnayer [wa]s agreeable to proceeding with the deposition only if the scope of Mr. Schnayer's deposition is strictly limited to the content of communications that he had with representatives of third party companies concerning the potential licensing of the '399 and/or '449 patents." [Dkt. #11-27]. On March 2, LG Electronic's counsel responded by raising concerns about what it deemed the narrow scope of the subject matter arguably allowed under Mr. Applegate's proposal and explained why a broader set of topics was necessary. [Dkt. #11-27].

On March 3, Mr. Applegate offered March 17 for the deposition, but once again wanted the subject matter restricted: "the deposition will be limited to the topic of Mr. Schnayer's knowledge of Papst's efforts to license to others the '399 and '449 patents that is not subject to work product or attorney-client privilege; i.e., the content of communications that he had with representatives of third party companies concerning the potential licensing of the '399 and/or '449 patents[.]" [Dkt. #11-28]. On March 6, LG Electronics' counsel proposed the subject matter scope as follows: "the Tasler patents and related applications—subject to limited background information as to the relationship between Mr. Schnayer and Papst Licensing; to agree that you, on Mr. Schnayer's behalf, may raise privilege objections and instruct not to answer on that basis—subject to later Court challenge[.]" [Dkt. #11-28]. Apple's counsel notified Mr. Applegate that it joined LG Electronics' proposal. [Dkt. #11-28]. On March 9, Mr. Applegate informed the parties that he had filed a motion to quash the subpoena.

## ANALYSIS

### A.

Mr. Schnayer submits that his deposition is improper because he is "opposing counsel" and also claims that it necessarily impinges on attorney-client and work product privileges and causes him an undue burden. Under Fed. R. Civ. P. 45(d)(3)(A), a district court "must quash or modify a subpoena" if it "requires disclosure of privileged or other protected matter" or subjects the respondent to an undue burden. We address undue burden first. Technically, Mr. Schnayer is a non-party to the Texas litigation, and that status generally qualifies one for special consideration under Rule 45. *Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir.1998).

It is one thing to subject *parties* to the trials and tribulations of discovery—rightly regarded as "the bane of modern litigation," *Rossetto v. Past Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir. 2000)—but a non-party doesn't usually have a horse in the race. *See Robinson v. Stanley*, 2010 WL 1005736, at *3 (N.D.Ill. 2010). The rationale for the partial solicitude accorded to non-parties is that, although discovery is by definition invasive, parties must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs. *Cusumano*, 162 F.3d at 717; *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 779 (9th Cir.1994)(noting that Rule 45 affords nonparties special protections against the time and expense of complying with subpoenas); *Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, at *1 (S.D.N.Y. 2017)*; Boehm v. Scheels all Sports, Inc*., 2016 WL 6124503, at *2 (W.D. Wis. 2016).

Determining "whether a subpoena imposes an undue burden upon a witness is a case-specific inquiry requiring consideration of 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.' The courts must balance the need for discovery against the burden imposed on the person ordered to produce documents. The party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.

Phrased differently, one claiming undue burden must do more than intone the phrase. *See EEOC v. Aerotek, Inc.*, 815 F.3d 328, 334 (7th Cir. 2016); *Reed v. State of Illinois*, 318 F.R.D. 77 (N.D.Ill. 2016); *Trading Technologies Intern., Inc. v. eSpeed, Inc.,* 2005 WL 1300778, *1

(N.D.Ill.2005)(Moran, J.); *Semien v. Life Insurance. Co. of North America,* No. 03 C 4795, 2004 WL 1151608, *1 (N.D.Ill.2004). *See also Dernier v. Gilbert*, 2017 WL 420118, at *4 (D. Kan. 2017). Undue burden or expense, actual or potential, must be shown by "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16 (1981); *Nemir v. Mitsubishi Motors Corp.* 381 F.3d 540, 550 (6th Cir.2004). What the Seventh Circuit said in *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010) applies equally here: "unfortunately... saying so doesn't make it so...." "Lawyers' talk is no substitute for data." *Phillips v. Allen,* 668 F.3d 912, 916 (7th Cir. 2012).

**B.**

Mr. Schnayer has not satisfied his exacting and quite legitimate burden. Indeed, he does not even explain why the burden imposed on him is "undue." The law does not seek to absolve nonparties from any burden, nor could it. Effort of some sort is an inherent part of life. Not only has Mr. Schnayer made no attempt to explain, let alone prove, why the burden on him is undue, he hasn't paused even to explain what the undue burden is. [Dkt. #5, at 1-2]. As long-time counsel for the plaintiff in the litigation who was involved in the acquisition, licensing and/or prosecution of at least some of the patents-in-suit, Mr. Schnayer is not unrelated to the suit and was not dragged into this suit to answer questions out of the blue. Even if he were, it would still be up to him to establish "undue burden" with the particularized showing that the law requires. *See CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir.2002).

The importance of protecting parties and non-parties from undue burden is found in various provisions of the Federal Rules of Civil Procedure. For example, Rule 26(c)(1) empowers a court to issue an order to protect a party or person from, *inter alia,* undue burden or expense. And Rule

26(g)(1)(B)(iii) provides that every discovery request must be signed by an attorney of record and that by signing, the attorney certifies that the document is neither unreasonable nor unduly burdensome. And finally, Rule 45(d)(1) requires that attorneys responsible for serving a subpoena must avoid imposing undue burden or expense on a person subject to the subpoena. To implement this requirement, Rule 45(d)(3)(A)(iv) mandates that on timely motion a court "must quash or modify" a subpoena that "subjects a person to undue burden."

Mr. Schnayer has not made the particularized showing the law requires of anyone claiming undue burden. Indeed, he doesn't even explain what the undue burden is. [Dkt. #5, at 1-2]. Instead, he argues, incorrectly, that it is up to Apple and LG Electronics to prove sitting for a deposition is not unduly burdensome. [Dkt. #14, at 13-14]. Mr. Schnayer's demand that *Apple* and *LG Electronics* make the showing required by Rule 45 and his reading of the 2-1 holding in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1987) is mistaken. It will not do for Mr. Schnayer to attempt to shift the burden Rule 45 has long imposed on a person complaining about a subpoena. Rule 45 and its consistent treatment by the courts preclude his effort to shift the burden from himself as the movant to the subpoenaing party. It is rather obvious that the person claiming that the burden of production imposed on him is too great is in a better position to explain why than is the party seeking information or documents. After all, who better than Mr. Schnayer can explain why production would subject *him* to a burden that for *him* is "undue," although it may be simplicity itself for someone else to comply.

**C.**

Mr. Schnayer formerly represented Papst in patent matters, but has not represented it in more than three years, and certainly not in the case pending in Texas. He has even said, in correspondence

with Apple and LG Electronics, that he has no clue what the litigation might be about. But that is often a common refrain from those who have been served with a subpoena. Sometimes it is true; other times it is not. But it cannot be an inevitable basis for stifling at the outset the obligation to be deposed. If Mr. Schnayer's attempt to excuse himself from testifying at a deposition under the present circumstance were to be allowed, almost no nonparty could ever be deposed.[3]

Still, in moving to quash the subpoenas, Mr. Schnayer submits that his deposition is not appropriate because he is "opposing counsel." He's not, of course. At least as that term is commonly understood and applied. *Anserphone of New Orleans, Inc. v. Protocol Communications, Inc.*, 2002 WL 31016572 (E.D.La. 2002). The rule announced in *Shelton*, and repeated in cases relying on it, is limited to depositions of counsel who have some role to play in "trial preparation." *See Shelton*, 805 F.2d at 1327. Thus, in *Pamida, Inc. v. E.S. Originals, Inc.,* 281 F.3d 726, 729–30 (8th Cir.2002),

---

[3] Claiming to have no knowledge or information about the subject of the subpoena or suit is not enough to avoid the responsibility of sitting for a deposition or to establish undue burden. *See Johnson v. Jung*, 242 F.R.D. 481, 483 (N.D. Ill. 2007); *Lynn v. Conoco*, Inc., 2001 WL 36196975, at *1 (S.D. Tex. 2001) If it were, there would be far fewer depositions than courts routinely allow. Of course, a deponent is free to answer that he or she doesn't know or doesn't recall, but one is not excused from compliance with a subpoena by the all too simple expedient of asserting that the subpoenaed individual knows nothing about the subject of inquiry. *See Reed v. Illinois*, 318 F.R.D. 77, 80 (N.D. Ill. 2016); *Ribeiro v. Baby Trend, Inc.*, 2016 WL 5874967, at *1 (D. Neb. 2016); *TCYK, LLC v. Does 1-44*, 2014 WL 656786, at *4 (N.D. Ill. 2014); *Donkeyball Movie, LLC v. Does*, 810 F. Supp. 2d 20, 24 (D.D.C. 2011).

In this case, Apple has filed a sur-reply pointing out that on March 22nd, Papst identified Mr. Schnayer as a person with knowledge of relevant facts, and thus is a potential trial witness. [Dkt. #25]. Mr. Schnayer's counsel's apparent willingness to negotiate and resolve the present dispute [Dkt. #22] do not change the analysis of this Opinion nor does Mr. Schnayer's supplementation of the record [*See* Dkt. #22, 26] compel the conclusion that Mr. Schnayer has no knowledge or memory of relevant facts or Papst's acquisition of the patents in suit. In the end, Papst insists that Mr. Schnayer has discoverable information while Mr. Schnayer says he does not. Only a proper deposition hedged about with all the appropriate rules and safeguards can ensure the desideratum of Rule 1 that the Rules should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding. With all deference, we are constrained to say that the post-briefing filings in this case do not advance analysis or change the outcome of the motion.

the court explained that *Shelton* did not exist in the abstract without regard to the circumstances that gave it birth. *Shelton* "was intended to guard against the 'harassing practice of deposing opposing counsel . . . that does nothing for the administration of justice, but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." *See also In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71-72 (2nd Cir.2003)(criticizing the application of *Shelton's* hurdles to deposing counsel outside of limited circumstances). "...*Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial. In such circumstances, the protection *Shelton* provides to opposing counsel only applies because opposing counsel is counsel in the instant case and not because opposing counsel had represented the client [earlier]." *Shelton*, 805 F.2d at 730-31. *See Pamida, Inc.,* 281 F.3d at 729–30; *United States v. Philip Morris Inc*., 209 F.R.D. 13, 17 (D.D.C. 2002).

Significantly, even *Shelton* and cases that have cited it, hold only that depositions of opposing counsel are "disfavored," *United States v. Yonkers Bd. of Educ*., 946 F.2d 180, 185 (2nd Cir. 1991), not prohibited regardless of the circumstances. *Shelton*, it must be recalled, was not some abstract exercise, but rather was designed to protect against abuses of the adversary system – where a party to litigation seeks to obtain an unfair advantage over its adversary by deposing lawyers who are actively involved in the case. "Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Hickman v. Taylor*, 329 U.S. 495, 516 (1947)(Jackson, J., concurring).

As Mr. Schnayer concedes, he is not representing Papst in the Texas litigation and has not represented Papst in any capacity for some time. Thus, his motion to quash, relying as it does on cases that are not governed by the situation here, in effect, is unsupported and unpersuasive. In other cases, attempts by lawyers to do what Mr. Schnayer is attempting have been unsuccessful. The one and a half million lawyers in this country are not automatically exempt from deposition – *Boston Edison Co. v. United States*, 75 Fed.Cl. 557, 562–563 (Fed.Cl.2007); *Continental Cas. Co. v. Multiservice Corp*., 2008 WL 73345, *6 (D.Kan.2008); *United States v. Philip Morris, Inc.,* 209 F.R.D. 13, 16 (D.D.C.2002) – even and perhaps especially under *Shelton*. They are subject to the long recognized obligation of all citizens to give evidence—an obligation expressed in the fundamental maxim that "'the public...has a right to every man's evidence.'" "[E]xceptions . . . are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974). *Accord United States v. Jacarilla Apache Nation*, 564 U.S. 162, 189 (2011); *Chzanowski v. Bianchi*, 725 F.3d 734 (7th Cir. 2013). Even the President of the United States is not immune from deposition. *Clinton v. Jones*, 520 U.S. 681, 704–05 (1997). *See also United States v. Burr*, 25 F.Cas. 30 (No. 14692d)(C.C.Va. 1807)(Marshall, C.J.)(upholding subpoena directed to President Jefferson). In short, to accord lawyers special treatment not accorded any other group of citizens cannot, unless language has lost all meaning, be deemed just. And yet, Rule 1 of the Federal Rules of Civil Procedure requires that the Rules be construed, administered, and employed by the court and the parties to secure the "just" determination of every action and proceeding.[4]

---

[4] To allow lawyers a virtually automatic exclusion from the obligations of other citizens would be as unjust to society as the famous quip often attributed to Dr. Johnson is to lawyers: "he hated to speak ill

continue...

**D.**

Mr. Schnayer claims that requiring an attorney to sit for a deposition necessarily impinges on attorney-work product and attorney-client privilege. Not only is it another way of saying that lawyers are excused from the obligation of all citizens to testify, its simply wrong. Moreover, at this point it is at worst a fear that may never be realized. Moreover, "[t]he claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable." *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983). *Accord United States v. Christensen*, 801 F.3d 970 (9th Cir.2015). As such, one cannot simply make a blanket claim of privilege at a deposition, let alone make one in advance and avoid testifying entirely. The proper course is to assert the privilege in response to a specific question or questions during the deposition.

This is the view that our Court of Appeals, in an unpublished opinion, has essentially said is the "appropriate" one. *N.L.R.B. v. Modern Drop Forge Co.,* 108 F.3d 1379 (7th Cir. 1997), 1997 WL 120572 at *2 and *3. It is the uniform view taken by courts around the country, *see, e.g., United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015)(relying on *Lawless)*; *In re Grand Jury Subpoena (Mr. S)*, 662 F.3d 65, 71 (1st Cir. 2011); *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002)*; In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999), including the Seventh Circuit after

---

[4]...continue
of any man behind his back, but thought the gentleman was a lawyer." In our adversary system lawyers are expected to make the best arguments they can, and partisan presentations by a lawyer are perfectly proper. *Smith v. Robbins,* 528 U.S. 259, 293 (2000) (Souter, J., dissenting) ("a partisan scrutiny of the record and assessment of potential issues, goes to the irreducible core of the lawyer's obligation to a litigant in an adversary system...."); *Philips Medical Systems Intern. B.V. v. Bruetman,* 8 F.3d 600, 606 (7th Cir.1993)(Posner, J.) (Consistent with the role of an advocate in our adversary system, it is assumed that counsel "is supposed to give the evidence a partisan slant."). But this does not mean that lawyers are to be given a privilege not accorded to other citizens.

*Lawless*. *See, e.g. United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992)("A blanket claim of privilege that does not specify what information is protected will not suffice."); *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991)("The claim of privilege cannot be a blanket claim; it 'must be made and sustained on a question-by-question or document-by-document basis.'"). *See also N.L.R.B. v. Modern Drop Forge Co.*, 108 F.3d 1379 (7th Cir.1997)(finding a question by question approach to depositions essential even where claims of attorney client privilege could be raised).[5] This has been the rule in the Seventh Circuit for more than a half century. *See Radiant Burners, Inc. v. American Gas Association*, 320 F.2d 314, 324 (7th Cir. 1963). *See also F.T.C. v. Shaffner*, 626 F.2d 32 (7th Cir. 1980).

The blanket assertion method of raising privilege claims is inconsistent with the Federal Rules of Civil Procedure. Rule 26(b)(5) requires that one claiming privilege expressly make the claim and describe the nature of the documents or communications not produced or disclosed and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim. Rule 45(e)(2)(A) provides that a person withholding subpoenaed information under a claim of privilege must in addition to making the claim describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing privileged information, will enable the parties to assess the claim. Thus, a blanket claim of privilege

[5] *Hunt Int'l*, explained:

> [C]ompletely preventing the taking of a deposition on either of the above grounds would tend to limit or fix the scope of the examination before it began and would usurp the court's role in deciding whether certain questions seek privileged information. The more appropriate method is to allow the deposition to be taken and permit the attorney to claim privilege in the face of certain questions, if necessary.

98 F.R.D. at 691.

is fundamentally at odds with the Federal Rules of Civil Procedure.

In *Modern Drop Forge*, the Seventh Circuit pointed out that the district court was aware that the procedure it proposed could be problematic, but that a prior restraint of the deposition raised "even more troublesome issues." 108 F.3d 1379. The Court of Appeals agreed with the district court that permitting a prior restraint of the deposition would require two assumptions: (1) that everything to which the proposed deponent would testify would be subject to the attorney-client privilege and (2) that the deponent would, in some instances, fail to adequately assert the privilege in the deposition. *Id.* These are, of course, assumptions that cannot be made in advance.

District courts here and elsewhere have used a similar approach of requiring the parties to proceed to deposition and assert applicable privileges and objections at the deposition. *See, e.g., qad.inc v. ALN Assocs., Inc*., 132 F.R.D. 492, 495 (N.D. Ill. 1990)(". . . this Court subscribes wholeheartedly to a procedure that rejects any prior restraint in favor of permitting the deposition to go forward, with any individualized objections to be dealt with during its regular course."); *Cook Inc. v. C.R. Bard, Inc*., 2003 WL 23009047, at *1 (S.D. Ind. 2003)(". . . the desirability of placing concrete objections before the Court for resolution, rather than asking the Court to resolve abstract privilege and relevancy arguments, outweighs the need to protect attorneys from the risk of sitting through frivolous depositions."); *Appvion, Inc. v. P.H. Glatfelter Co.*, 2016 WL 1261090, at *1 (E.D. Wis. 2016)("To the extent some of the information sought would be privileged, the attorney being deposed (themselves also represented by counsel) will be equipped to navigate those waters."); *Kaiser v. Mutual Life Ins. Co. of New York*, 161 F.R.D. 378, 380 (S.D.Ind.1994)("[D]eponents are expected...to assert their objections during the deposition and to allow questioning parties to develop circumstantial facts in order to explore the propriety of the assertion of the privilege, immunity, or

other objection") (*citing* 8 Fed'l Prac. & Proc. § 2037 at 272); *Cooper v. Welch Foods, Inc.*, 105 F.R.D. 4, 6 (W.D.N.Y.1984) (finding that deposition of attorney should be taken and privileges asserted therein); *In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 429, 437-38 (E.D.Pa.1981) ("If the questions to be asked of Mr. Griffin delve into privileged areas then his recourse will be to object and refuse to answer. Such an objection and refusal to answer should, of course, be predicated upon a sufficient demonstration that the matter inquired into is privileged....In any event, the Court cannot rule in a vacuum, prior to the deposition, that every question to be asked will seek to elicit privileged information"); *Walker v. United Parcel Services,* 87 F.R.D. 360, 362 (E.D.Pa.1980) (refusing to allow defendant's attorney to be deposed, but stating that "[t]he Court would ordinarily require attorney-client privilege and work product exception questions to be resolved at a deposition rather than in the abstract in advance.") (*citing Jamison v. Miracle Mile Rambler, Inc.*, 536 F.2d 560, 565–66 (3rd Cir.1976) and *Scovill Mfg. Co. v. Sunbeam Corp.*, 61 F.R.D. 598 (D.Del.1973)).

Indeed, the course championed by Mr. Schnayer is inconsistent with the Supreme Court's statement that "[t]he first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." *Upjohn Company v. United States,* 449 U.S. 383, 390 (1981). *Accord Sandra T.E. v. South Berwyn School Dist.* 100, 600 F.3d 612, 619 (7th Cir.2010). Thus, we cannot approve the kind of blanket immunity from deposition for attorneys sought in substance, although not in name, by Mr. Schnayer, any more than we can accept a blanket assertion of privilege. Indeed, properly understood, the two coalesce, and one is merely a form of the other. *Lawless*, 709 F.2d at 487.

**E.**

As the cases cited earlier show, this does not leave Mr. Schnayer without adequate protection. He may answer each question that does not infringe on some privilege, and he may raise a privilege objection where it is proper. What he cannot do is to pretermit the deposition. This approach creates a record more suitable for argument and decision over what is and isn't privileged than Mr. Schnayer's approach, which leaves the question of privilege either decided in advance in his favor or which can only be unsatisfactorily discussed in the abstract. *Modern Drop Forge Co.*, 108 F.3d 1379, 1997 WL120572, at *4.

The debate is even more elusive here, because the case is pending hundreds of miles away in a different district court, and the court here necessarily lacks the insight into and familiarity with the various and potentially complicated issues in that case. *See* Fed.R.Civ.P. 45(f); *Elliott v. Mission Trust Services, LLC,* 2014 WL 6772472 at *3 (W.D.Tex 2014)(transfer based on issuing court's familiarity with the case). The claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable. The scope of the privilege should be 'strictly confined within the narrowest possible limits.' " *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983); *United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015); *Elliott v. Mission Trust Services., LLC*, 2014 WL 6772472, at *3 (W.D. Tex. 2014)(transfer based on issuing court's familiarity with the case).

**CONCLUSION**

While the motion to quash the subpoena of Mr. Schnayer is denied, this ruling is a necessarily limited one and should not be misconstrued. An attorney client/work product privilege is claimed and presumably will be asserted by Mr. Schnayer, who previously worked for Papst. Curiously, he

is now on Papst's list of individuals who have knowledge of the matters in the litigation. A claim of privilege, where properly invoked and where it properly applies, will be protected. Where it is not, a claim of privilege will not protect Mr. Schnayer from being required to answer the question. The parties should familiarize themselves with Judge Easterbrook's opinion in *Redwood v. Dobson*, 476 F.3d 462 (7th Cir. 2007).

The motion to quash subpoenas [Dkt. #1] is denied.

**ENTERED:**______________________________
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 4/4/17